UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Jon W. Larochelle, Jr.</u>,
     Plaintiff

     v.                           Case No. 14-cv-479-SM
                                         Opinion No. 2015 DNH 218
<u>N.H. Department of Corrections;</u>
<u>Jennifer L. Goduti; Scott Harrington;</u>
<u>and Michael McAlister</u>,
     Defendants

**<u>O R D E R</u>**

Jon Larochelle is currently an inmate at the New Hampshire State Prison for Men in Concord, New Hampshire.  At all times relevant to this proceeding, however, he was on parole status, under the supervision of the New Hampshire Department of Corrections.  He claims that his assigned alcohol and drug counselor, defendant Jennifer Goduti, coerced him into a sexual relationship and provided him with both alcohol and controlled substances.  According to Larochelle, Goduti's maintenance of a sexual relationship with him (as well as supplying him with both drugs and alcohol), while simultaneously acting as his state-appointed alcohol and drug counselor, was not only unethical, but also violated his common law and constitutionally protected rights.

In his amended complaint, Larochelle advances claims directly against Goduti for alleged violations of his constitutional rights and various common law torts.  He also advances claims against the New Hampshire Department of Corrections and several of its employees, asserting that those defendants (the "State Defendants") are both vicariously liable for Goduti's wrongful conduct and independently liable for their own negligent failure to properly train and supervise her.  The State Defendants move to dismiss all claims advanced against them, asserting that none states a viable cause of action.  See Fed. R. Civ. P. 12(b)(6).  Larochelle objects.

For the reasons stated, the State Defendants' motion to dismiss is granted in part and denied in part.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader."  SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010).  Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and

2

"contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." <u>Id</u>. at 570.  If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." <u>Tambone</u>, 597 F.3d at 442.

## Background

Accepting the factual allegations set forth in plaintiff's amended complaint as true — as the court must at this juncture — the relevant background is as follows.  During the period of time relevant to this litigation, plaintiff was on parole status and under the supervision of the New Hampshire Department of Corrections ("DOC").  During most of that time, he was subject to

"active supervision," which meant that he had to meet routinely with his parole officer and submit to breath, blood, and/or urinalysis testing for the presence of illegal or prohibited substances, including drugs and alcohol.  And, of course, any violation of the conditions of his parole carried the risk of re-incarceration.

Jennifer Goduti was a licensed alcohol and drug counselor, employed by the DOC and working in the Manchester, New Hampshire, field service office.  Scott Harrington was the Chief Probation and Parole Officer for the DOC in Manchester and, according to plaintiff, supervised the Manchester field office and its employees.  Michael McAlister was the Director of Field Services for the DOC and, according to plaintiff, was responsible for supervising all DOC field service offices, including the one in Manchester.

In the fall of 2011, Goduti was assigned to act as plaintiff's "Case Counselor/Case Manager" and began working with him as his alcohol and drug counselor.  At some point early in their relationship, Goduti reportedly told plaintiff that, "I have control over the drug addicts that walk into the office," and "whatever advice I give to the parole officer, that's what they go with."  Amended Complaint (document no. 16) at para. 36.

4

Plaintiff suggests that this was an implicit threat that if he failed to adhere to her instructions (or, presumably, if he refused to succumb to her demands), she would see to it that he was sent back to prison.

Plaintiff says that after performing an initial evaluation of him, Goduti learned that he has been a chronic substance abuser for most of his adult life and, among other things, is a heroin addict.  He claims that by virtue of the authority vested in her by the DOC, as well as her knowledge of the intimate details of his medical and personal history, Goduti exercised significant control over him.  He also alleges that, during the course of her supervision and counseling of him, Goduti:

1.    Informed him that she was physically/sexually attracted to him;

2.    Repeatedly contacted him by telephone and text messaging to set up meetings outside the parole field office;

3.    On at least one occasion, provided plaintiff with a controlled substance and alcohol;

4.    Began a sexual relationship with plaintiff, during which she sexually harassed, exploited, and assaulted him; and

5.    Engaged in at least some of her inappropriate sexual contact with plaintiff at her place of work.

Id. at paras. 46-55.  Plaintiff says that because he was on
parole, he feared that he would be re-incarcerated if he did not
comply with Goduti's demands.  And, he claims Goduti took
advantage of, and abused, the authority she had over him.  In
short, plaintiff says he was coerced into maintaining a sexual
relationship with Goduti.  Moreover, says plaintiff, although
Goduti's inappropriate sexual relationship with him was known to
others, the State Defendants did not investigate the matter nor
did they do anything to intervene.

In his fifteen-count amended complaint, plaintiff advances
numerous common law and constitutional claims against the various
defendants.  Currently at issue are the seven counts advanced
against the State Defendants.

### Discussion

There are two means by which the State Defendants might be
liable to plaintiff.[1]  First, they might be directly liable for
their own individual negligence or malfeasance.  Plaintiff
advances claims of that sort in counts eleven, twelve, thirteen,

---

[1]      Because the State Defendants do not distinguish the
potential liability of Goduti's employer (the DOC) from that of
Goduti's individual supervisors (Harrington and McAlister), for
purposes of ruling on this motion to dismiss, the court has
treated all three defendants in the same manner with respect to
plaintiff's respondeat superior claims, but notes that there may
be significant differences.

and fifteen of his amended complaint.  Second, as Goduti's
employer, the State Defendants might be vicariously liable for
<u>her</u> torts, provided they were committed while she was acting
within the scope of her employment.  <u>See generally</u> Restatement
(Third) Agency, § 7.03 ("Principal's Liability").  Plaintiff
advances claims of that sort — invoking what is known as
"respondeat superior" liability — in counts five, six, and
seven.[2]


    In addition to advancing different theories of liability,
the amended complaint asserts two general categories of claims:
common law torts and violations of plaintiff's constitutional
rights.  <u>See generally</u> 42 U.S.C. § 1983.


I.    <u>Common Law Torts</u>.

    A.    Vicarious Liability for Goduti's Unlawful Conduct.

    In counts five, six, and seven of the amended complaint,
plaintiff alleges that Goduti was acting within the scope of her
employment and benefitting her employer when she: (a) coerced
plaintiff into an inappropriate sexual relationship and provided
him with both alcohol and controlled substances; and (b) failed
to provide plaintiff with constitutionally adequate medical

--------

    [2]    "Respondeat superior" is Latin for "let the superior
make answer."  Black's Law Dictionary (10th ed. 2014).

treatment, in violation of the Eighth Amendment.  Accordingly, he asserts that the State Defendants are, under the doctrine of respondeat superior, vicariously liable for Goduti's unlawful conduct.

The common law doctrine of respondeat superior provides that "an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff." Pierson v. Hubbard, 147 N.H. 760, 766 (2002) (citing Daigle v. City of Portsmouth, 129 N.H. 561, 579 (1987)).  In support of their motion to dismiss, the State Defendants assert that they cannot be vicariously liable for Goduti's wrongful conduct because she was not acting within the scope of her employment when she committed the various torts about which plaintiff complains.

For an employee's conduct to fall within the scope of his or her employment, it must meet three criteria: (a) it must have been of the kind he or she was employed to perform; (b) it must have occurred substantially within the authorized time and space limits of his or her employment; and (c) it must have been undertaken, at least in part, by a purpose to serve the employer. See Pierson, 147 N.H. at 766 (citing Restatement (Second) of

Agency § 228 (1958)).  Plaintiff's amended complaint fails to
plausibly allege the first and third essential elements of that
test.

     While Goduti's wrongful conduct toward plaintiff certainly
arose out of her counseling relationship with him, the amended
complaint fails to adequately allege that it was the type of
conduct she was employed to perform, nor does it adequately
allege that her wrongful conduct was undertaken with at least
some demonstrable (or even de minimis) purpose to serve the DOC.
See Daigle, 129 N.H. at 580 (holding that "behavior within the
scope of employment must be actuated at least in part by an
object to serve the employer," and "must have been performed in
'furtherance' of the employer's business").  See also Birkner v.
Salt Lake County, 771 P.2d 1053, 1058 (Utah 1989) ("[I]t is well
accepted that sexual activity between therapist and patient is
not related to the master's objectives or interests."); Buck v.
Blum, 130 S.W.3d 285, 289-90 (Tex. App. 2004) (holding that while
physician's alleged sexual assault of patient "was inappropriate,
it cannot be fathomed that the action was in furtherance of the
employer's business or for the accomplishment of an object for
which he was employed"); Bunce v. Parkside Lodge of Columbus, 596
N.E.2d 1106, 1108 (Ohio App. 1991) ("The instant facts do not
establish that sexual contact between Brown and Bunce was in the

scope of Brown's employment.  [Brown's employer] neither recommended nor condoned such a counselor/patient relationship. Instead, this was a situation in which the employee acted from intensely personal motives, be they malice, lust or rage, and in which Brown was indisputably outside his appointed tasks.") (citation and internal punctuation omitted).  See generally Bernie v. Catholic Diocese of Sioux Falls, 821 N.W.2d 232, 237 (S.D. 2012) ("An act furthers the principal's business if it carries out the objectives of the employment.  'Within the scope of employment' has been called vague but flexible, referring to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.") (citations and internal punctuation omitted).

Here, Goduti's alleged conduct — that is, coercing plaintiff into a sexual relationship and providing him with both alcohol and controlled substances (contrary to his parole restrictions) — was so far removed from her duties as a parole drug and alcohol counselor that it cannot be said to have been undertaken within the scope of her employment or with any purpose to serve her employer.  As the Wisconsin Court of Appeals observed in a similar case:

> We reject Block's contention that the "transference phenomenon" makes Gomez's sexual relationship with Block inseparable from his therapeutic relationship with Block for purposes of the Clinic's vicarious liability.  Therapist-patient sex arises not out of the transference, which is essential to the therapy, but the intentional abuse of the transference.
>
> It is undisputed that Gomez knew that he was forbidden by the Clinic to enter into a sexual relationship with his patients because the Clinic had a written policy forbidding such conduct between its therapists and patients.  Gomez acknowledged that he entered into the sexual relationship anyway.  Thus, Gomez undisputedly stepped aside from the Clinic's business to procure a purely personal benefit; that is, a sexual relationship with Block.  Accordingly, the trial court could properly conclude from the evidence presented, even when viewing that evidence most favorably to Block, that Gomez's conduct was not partially actuated by a purpose to serve the employer.  As such, the trial court could also properly rule that Gomez's actions, as a matter of law, fell outside the scope of his employment with the Clinic.

Block v. Gomez, 549 N.W.2d 783, 788 (Wis. Ct. App. 1996) (citations and internal punctuation omitted).

Even accepting the factual allegations of the amended complaint as true, and construing those allegations in the light most favorable to plaintiff, it is plain that Goduti was not acting within the scope of her employment when her alleged conduct injured the plaintiff.  Accordingly, counts five, six, and seven, seeking to hold the State Defendants vicariously

liable for Goduti's common law torts, fail to state a viable cause of action.[3]

Parenthetically, the court notes that, in his opposition memorandum, plaintiff advances an alternate theory of liability: he asserts that defendants can be held vicariously liable for Goduti's wrongful conduct on grounds that her sexual harassment of him was facilitated by her supervisory authority over him — something he describes as Goduti's "apparent authority." That argument fails for several reasons. First, and perhaps most importantly, that theory of liability is not advanced in plaintiff's amended complaint. Second, even if that claim were advanced in the amended complaint, plaintiff has failed to

_____

[3]     While acknowledging that New Hampshire common law embraces a different test to determine respondeat superior liability, plaintiff asserts that such liability should attach in this case because Goduti's wrongful conduct was "foreseeable" by the DOC. Although some courts do employ what is considered the more liberal "enterprise risk" or "foreseeability" test to determine whether an employee's conduct occurred within the "course and scope" of employment, New Hampshire common law appears to embrace the more conservative "motive to serve" test. See generally M. Chamallas, Vicarious Liability in Torts: The Sex Exception, 48 Val. U. L. Rev. 133, 138 (2013).  See also Daigle, 129 N.H. at 582 ("We have never had occasion to decide whether the foreseeability of the degree of an employee's misuse of force should set the limit to the employer's derivative liability."). Of course, under New Hampshire common law, the foreseeability of an employee's wrongful conduct is relevant in a distinct, but related, context: whether the employer can be directly liable for its own negligent hiring or training of the employee.  See, e.g., Cutter v. Farmington, 126 N.H. 836, 841 (1985).  See generally Restatement (Third) of Agency, § 7.05.

adequately brief the contours of such a claim in response to
defendants' motion to dismiss.  It is, therefore, deemed forfeit.

Moreover, while Goduti plainly did not project apparent
authority from the DOC to conduct an illicit sexual relationship
with plaintiff (or to provide him with drugs and alcohol), a
charitable interpretation of plaintiff's "apparent authority"
theory of liability suggests that he is actually invoking a
principle described in the Restatement (Second) of Agency known
as "aided in accomplishing" or "aided in the agency."  See
generally Burlington Indus. v. Ellerth, 524 U.S. 742, 759-60
(1998) ("When a party seeks to impose vicarious liability based
on an agent's misuse of delegated authority, the Restatement's
aided in the agency relation rule, rather than the apparent
authority rule, appears to be the appropriate form of
analysis.").  See also Restatement (Second) of Agency,
§ 219(2)(d) (noting that an employer "is not subject to liability
for the torts of his servants acting outside the scope of their
employment unless . . . the servant purported to act or speak on
behalf of the principal and there was reliance on apparent
authority, or he was aided in accomplishing the tort by the
existence of the agency relation").  Importantly, however, the
Restatement (Third) of Agency no longer embraces that theory of
liability.  See Restatement (Third) of Agency, § 7.08, comment b.

("This Restatement does not include 'aided in accomplishing' as a distinct basis for an employer's (or principal's) vicarious liability.").

And, of course, this is a federal court — generally an inappropriate forum in which to seek the substantial expansion of existing New Hampshire common law (a request implicit in plaintiff's memorandum, given his lack of citation to any New Hampshire precedent supportive of his "apparent authority" theory of liability).  See, e.g., Farwell v. Town of Brookline, 2000 WL 1745137, at *4 (D.N.H. Oct. 20, 2000) ("[T]his court is and should be hesitant to blaze new, previously uncharted state-law trails.  Expansive reading of New Hampshire's [common law] is a realm best occupied by the New Hampshire Supreme Court.").

Finally, plaintiff's constitutional claims are discussed more fully below.  But, to the extent counts five, six, and seven assert claims against the State Defendants for Goduti's alleged violation of plaintiff's constitutional rights, those claims can be resolved quickly.  The constitutional claims advanced in those counts are based upon respondeat superior and are brought pursuant to 42 U.S.C. § 1983.  It is, however, well-established that supervisory liability under section 1983 cannot be premised on a theory of respondeat superior.  See, e.g., Monell v. Dep't

14

of Soc. Servs., 436 U.S. 658, 694 (1978).  See also Voutour v.
Vitale, 761 F.2d 812, 819 (1st Cir. 1985) ("The Supreme Court has
firmly rejected respondeat superior as a basis for section 1983
liability of supervisory officials."); Trimble v. Androscoggin
Valley Hosp., 847 F. Supp. 226, 227 (D.N.H. 1994) ("A defendant
cannot be held liable under section 1983 on a respondeat superior
or vicarious liability basis.").

    Consequently, to the extent that they advance respondeat
superior claims based upon Goduti's common law torts, as well as
her alleged failure to provide plaintiff with constitutionally
adequate medical treatment, counts five, six, and seven of
plaintiff's amended complaint fail to state viable causes of
action.

    B.   Count Twelve - Negligent Supervision.

    In count twelve of his amended complaint, plaintiff advances
common law tort claims against various yet-to-be-identified
licensed clinical supervisors (the "Doe Defendants").
Specifically, he asserts that those defendants negligently
trained and/or supervised Goduti and, thereby, proximately caused
his injuries.  In support of that claim, plaintiff points to the
duties imposed upon licensed clinical supervisors by New

Hampshire statute.  That statute provides, in relevant part, that licensed clinical supervisors shall:

> (a) Exercise responsibility over alcohol and drug counselors concerning all activities, including but not limited to, alcohol and drug counselor development, skill assessment and performance evaluation, staff management and administration, and professional responsibility.
>
> (b) Not permit a supervisee to engage in any practice that the supervisee is not competent to perform.
>
> (c) Be legally and ethically responsible for the supervised activities of the counselors he or she supervises.
>
> (d) Be available or make appropriate provision for emergency consultation and intervention.
>
> (e) Interrupt or stop the supervisee from practicing in given cases, or recommend to the supervisee's employer that the employer interrupt or stop the supervisee from practicing in given cases, and to terminate the supervised relationship, if necessary.

N.H. Rev. Stat. Ann. 330-C:12 II.


The State Defendants persuasively argue that Goduti's clinical supervisors had no duty to train her to refrain from sexually exploiting and/or assaulting her clients.  See Defendants' Memorandum (document no. 18-1) at 10-12.  As discussed more fully below, the court is inclined to agree. Defendants do not, however, address plaintiff's claim that if those clinical supervisors had adequately supervised Goduti, plaintiff would not have been harmed.

16

Accepting the factual allegations of the complaint as true, the court necessarily concludes that count twelve of the amended complaint asserts a viable common law claim to the extent it asserts that one or more Doe Defendants negligently failed to supervise Goduti, which failure proximately caused plaintiff's injuries.

C.   Count Fifteen - Negligence.

Finally, in count fifteen of his amended complaint, plaintiff alleges that Harrington, McAlister, and the DOC were negligent in failing to investigate allegations that Goduti had engaged plaintiff in an inappropriate sexual relationship.  In response, defendants point out that the amended complaint fails to allege that they had actual knowledge of Goduti's conduct. And, say defendants, they had no duty "to investigate situations and circumstances of which they [were] not aware."  Defendants' Memorandum (document no. 18-1) at 17.

While defendants are correct in asserting that the amended complaint fails to allege that they had <u>actual</u> knowledge of Goduti's inappropriate conduct, it does allege sufficient facts to support the conclusion that they had <u>constructive</u> knowledge of the situation.  That is to say, the amended complaint adequately alleges that if defendants had performed their jobs in a non-

17

negligent manner, they would have been aware of Goduti's inappropriate and unlawful conduct.  That, in turn, would have given rise to a duty to investigate.[4]

At this juncture, the court must accept the factual allegations of the amended complaint as true.  Doing so compels the conclusion that count fifteen of the amended complaint adequately states a viable negligence claim against defendants. Whether plaintiff can produce evidence to support that claim is an entirely different matter — one that must be resolved either on summary judgment or at trial, by the trier-of-fact.

II.  <u>Constitutional Violations</u>.

A.   Count Eleven - Supervisory Liability.

In count eleven of his amended complaint, plaintiff alleges that Chief Probation Officer Harrington's failure to adequately supervise Goduti proximately caused his constitutional injuries — that is, the violation of rights protected by the Fourteenth Amendment.  As noted above, supervisory liability under section 1983 cannot be predicated on a respondeat superior theory.

---

[4]     Defendants' memorandum does not discuss the existence or scope of their alleged duty to investigate Goduti's sexual harassment/abuse of plaintiff.  Accordingly, for purposes of resolving their motion to dismiss, the court has assumed that New Hampshire common law imposes such a duty to investigate upon them.

Rather, a supervisor may be held liable "only on the basis of the supervisor's own acts or omissions." <u>Seekamp v. Michaud</u>, 109 F.3d 802, 808 (1st Cir. 1997). <u>See also</u> <u>Maldonado-Denis v. Castillo-Rodriquez</u>, 23 F.3d 576, 581 (1st Cir. 1994) ("Although a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a respondeat superior theory, he may be found liable under section 1983 on the basis of his own acts or omissions.") (citations omitted).

Supervisory liability for constitutional injuries attaches only when: "(1) there is subordinate liability, and (2) the supervisor's action or inaction was 'affirmatively linked' to the constitutional violation caused by the subordinate." <u>Aponte Matos v. Toledo-Davila</u>, 135 F.3d 182, 192 (1st Cir. 1998). Moreover, that "affirmative link" must amount to "supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference." <u>Id.</u> (citation and internal punctuation omitted). <u>See also</u> <u>Soto-Torres v. Fraticelli</u>, 654 F.3d 153, 158 (1st Cir. 2011) ("a supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an 'affirmative link' between the behavior of a subordinate and the action or inaction of his supervisor such that the supervisor's conduct led

inexorably to the constitutional violation.") (citations and
internal punctuation omitted).

The State Defendants contend that Harrington cannot be
liable for Goduti's violation of plaintiff's constitutional
rights because he was completely unaware of the fact that she had
engaged plaintiff in a sexual relationship.   Indeed, the State
Defendants point out that there are no allegations in the
complaint that Harrington was even aware of Goduti's wrongful
conduct toward plaintiff.   Nevertheless, says plaintiff, the
amended complaint states a viable claim against Harrington
because it plausibly alleges that he had constructive knowledge
of Goduti's violation of plaintiff's constitutional rights, yet
made a conscious and deliberate choice not to investigate.   The
court disagrees.

Even construing the factual allegations of the amended
complaint in the light most favorable to the plaintiff, at best
one might infer that Harrington was negligent in failing to
discover Goduti's illicit sexual relationship with plaintiff.
The amended complaint does not, however, allege sufficient facts
to support the conclusion that Harrington was willfully blind to
the existence of that relationship, or that he was somehow

deliberately indifferent to the alleged violation of plaintiff's constitutional rights.  As the court of appeals has noted:

> Although government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior, officials may be held liable if the plaintiff can establish that her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization. Under either a direct or indirect theory of liability, the plaintiff must show that the official had actual or constructive notice of the constitutional violation. An important factor in making the determination of liability is whether the official was put on some kind of notice of the alleged violations, for one cannot make a 'deliberate' or 'conscious' choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps.

Rodriquez-Garcia v. Miranda-Marin, 610 F.3d 756, 768 (1st Cir. 2010) (citations and internal punctuation omitted) (emphasis supplied).[5]

While the amended complaint adequately alleges that Harrington may have been negligent, it does not allege sufficient facts to support the conclusion that he was deliberately

---

[5]     As Justice Souter has noted, the test for whether a state or federal actor is deliberately indifferent to the constitutional rights of a plaintiff is a subjective one.  That is, such an actor is not deliberately indifferent unless he or she "knows of and disregards an excessive risk to [the plaintiff's] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

indifferent or willfully blind to the existence of Goduti's sexual relationship with plaintiff.  Consequently, count eleven of the amended complaint fails to state a plausible basis to hold Harrington liable for the violation of plaintiff's constitutional rights.  That is, it does not plausibly allege that Harrington's "behavior demonstrates deliberate indifference to conduct that [was] itself violative of a plaintiff's constitutional rights." Maldonado-Denis, 23 F.3d at 582.

B.    Count Thirteen - Unconstitutional Custom or Policy.

It is difficult to discern the precise nature of the claims advanced in count thirteen of the amended complaint.  That is to say, it is unclear whether plaintiff is alleging common law negligence claims against the named defendants (as defendants seem to believe), or if he is asserting that defendants are liable to him under section 1983 for the violation of constitutionally protected rights.  But, in his opposition memorandum, plaintiff makes clear that count thirteen seeks to impose liability on defendants under section 1983.  See Plaintiff's Memorandum (document no. 20-1) at 9.

In that count, plaintiff alleges that Harrington, McAlister, and the DOC, failed to properly train and/or supervise Goduti, which failure proximately caused his constitutional injuries.

22

Moreover, says plaintiff, defendants' wrongful conduct was the product of an official custom or policy that was the "moving force" behind his injuries.   See generally Monell, 436 U.S. at 694.

Because count thirteen of the amended complaint advances a constitutional claim against the State Defendants, rather than merely a common law negligence claim, plaintiff bears a heavier burden.   To state a viable cause of action, the amended complaint must plausibly allege that:

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers in the [defendant] can reasonably be said to have been deliberately indifferent to the need.   In that event, the failure to provide proper training may fairly be said to represent a policy for which the [defendant] is responsible, and for which the [defendant] may be held liable if it actually causes injury.

City of Canton v. Harris, 489 U.S. 378, 390 (1989) (emphasis supplied).   See also Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005) ("The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto respondeat superior, has set a very high bar for assessing municipal liability under Monell.   The alleged municipal action at issue must constitute a 'policy or custom' attributable to the

23

City.   Further, the Supreme Court has imposed two additional
requirements: 1) that the municipal policy or custom actually
have caused the plaintiff's injury, and 2) that the municipality
possessed the requisite level of fault, which is generally
labeled in these sorts of cases as 'deliberate indifference.'")
(citations omitted).

Here, the amended complaint fails to plausibly allege that
defendants had actual or constructive knowledge that Goduti's
alcohol and drug training was so deficient, and the need for
"more or different training [was] so obvious, and the inadequacy
so likely to result in the violation of constitutional rights,"
Harris, 489 U.S. at 390, that one could reasonably conclude that
defendants were deliberately indifferent to that need.   Indeed,
the amended complaint actually acknowledges the extensive
training that Goduti had already received in order to obtain (and
maintain) her license from the State of New Hampshire as an
alcohol and drug counselor.   It also notes that the "Alcohol and
Drug Counselor Code of Conduct" specifically prohibits counselors
from engaging in any sexual activity with a client.   Amended
Complaint at para. 57.   And, the amended complaint further
alleges that, in May of 2012, as part of her re-licensing with
the State of New Hampshire, Goduti "signed a form indicating her
assurance that she would not engage in certain behavior,

24

including engaging in sexual activity with a client." <u>Id</u>. at
para. 58.

Plainly, then, Goduti had received relevant professional
training that included very specific instructions not to engage
clients in sexual activity.  Indeed, Goduti acknowledged
understanding that proscription in writing.  It is, therefore,
difficult to imagine how or what additional training conducted by
defendants would have prevented the alleged violation of
plaintiff's constitutional rights at issue in this case.  At a
minimum, it is plain that the amended complaint fails to allege
sufficient facts to state a plausible claim that defendants were
deliberately indifferent to the need to provide Goduti with
additional relevant training.

Plaintiff's related assertion — that defendants failed to
adequately supervise Goduti — also fails to state a viable
constitutional claim.  In short, the amended complaint does not
allege facts which, if credited as true, would support the
conclusion that the plaintiff's claimed injuries were the product
of an official custom or policy borne of defendants' deliberate
indifference to his constitutional rights.  At most, construing
the factual allegations of the amended complaint in the light
most favorable to plaintiff, one might conclude that the State

Defendants were negligent in their failure to discover Goduti's sexual relationship with plaintiff.  But, to state a viable constitutional claim, the amended complaint must allege more than mere negligence on the part of defendants.  See, e.g., Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014). Rather, it must allege that they were deliberately indifferent or, at a minimum, willfully blind to Goduti's unconstitutional behavior.  See, e.g., Maldonado-Denis, 23 F.3d at 582 ("One way in which a supervisor's behavior may come within this rule is by formulating a policy, or engaging in a custom, that leads to the challenged occurrence.  Thus, even if a supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it.") (citations omitted).  See also Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005) ("In order to hold the county liable, the plaintiff must prove a constitutional violation resulting from a policy statement, ordinance, regulation or decision officially adopted and promulgated by those in charge of the jail.  A custom or practice may suffice to show such a policy if it is so widespread or pervasive that the policymakers must have had actual or constructive notice of it, yet did nothing to modify it.") (citations and footnote omitted) (emphasis supplied).  See

26

generally <u>Whitfield v. Melendez-Rivera</u>, 431 F.3d 1, 12 (1st Cir. 2005).

The allegations set forth in count thirteen of the amended complaint fall well short of alleging a plausible constitutional claim based upon the State Defendant's alleged maintenance of an official custom or policy that was the "moving force" behind the violation of plaintiff's constitutional rights.  Consequently, that count fails to state a viable cause of action.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss (document no. 18) is granted in part, and denied in part.  Counts two, five, six, seven, eleven, and thirteen of the amended complaint fail to plausibly allege viable causes of action and are, therefore, dismissed.[6]  Counts twelve and fifteen, however, are sufficient to state viable common law causes of action for negligence.

On or before June 1, 2016, plaintiff shall identify and properly serve the "Doe Defendants," failing which his claim

---

[6]     At oral argument, counsel for plaintiff conceded that count two of the amended complaint fails to state a viable claim (for lack of proper exhaustion) and agreed that it should be dismissed.

against those unidentified defendants (i.e, count twelve) shall

be dismissed.

**SO ORDERED.**

_____

Steven J. McAuliffe
United States District Judge

December 2, 2015

cc:  Matthew R. Braucher, Esq.
     Elizabeth A. Lahey, Esq.
     Richard W. Head, Esq.
     Simon R. Brown, Esq.